Could the clerk call the next case, please? Could everybody please be seated? Thank you. Good afternoon. The third member of our panel today is Justice Litton. He's here, but he's ill. He will be able to listen to the tapes and will be participating in the decision. Mr. Vess, although the Swanson defendants have waived argument, it is your right, if you want, to address your argument with regard to them as well. Thank you. I do not intend to address the Swanson appeal and to focus instead entirely on our appeal against the bank, unless, of course, the Court has questions about the Swanson appeal. May it please the Court, this is an equitable proceeding. The trial court awarded the Stumps a vendor's lien in one instance and rescission of a deed in the other instance, but the Court did not give the Stumps priority over the bank's mortgages, which had the practical effect of giving title to the properties to the bank. We're here because the Court put the bank's mortgages, their mortgage liens, ahead of the Stumps' interests. As a matter of equity, the bank had the last opportunity to prevent the losses, and the bank was in the best position to absorb the losses, and yet the Court gave the bank the most protection from the losses. That is not equitable, where it leaves an elderly couple in their 80s with no real estate development experience, out almost $6 million in purchase prices, and without 79 acres in property. We think that was error, and that's why we're here. The result in the trial court, we think, is exactly what is supposed to be prevented by the Conveyances Act, which has been around since at least 1872, pretty much in its present form. A mortgagee like the bank is regarded as a purchaser. A purchaser of real estate may rely on the public record of conveyances to reflect the state of title unless that party has notice or is chargeable with notice of a claim or interest that is inconsistent with what's recorded. One who takes a mortgage with any notice, be it actual, constructive, or inquiry notice, which is a form of constructive notice, of an earlier, unrecorded interest, takes that interest, subject to the previous interest, does not have priority over it, and is not a bona fide purchaser as to that interest. Here's what we claim and don't claim in this case. We don't claim that the bank owed a duty to the Stumps, or that the bank had a fiduciary or other relationship with the Stumps, or that the bank had a contract with the Stumps. Those issues were stipulated out of the case at the time the bank filed a motion for summary judgment before trial. We do claim that the vendor's lien found by the trial court attached to the property and was not just against the parties that owned the property as the trial court held. And further, that the vendor's lien that the court found related back to the time when it was created, which would be the time that the Stumps gave the deed without being paid the purchase price. That's all that has to happen to create a vendor's lien. And what terminates one? And what terminates one? There are a number of things that can possibly terminate one. One would be express language in an agreement that would terminate it. Another would be an express waiver of the lien at a later time, not included in a prior document. Another would be some conduct that would be held to constitute a waiver. Now, we say waivers shouldn't be considered in this case, and I'll get to that in a moment, but those are generally the things that would terminate a vendor's lien. Of course, payment would terminate it, too. We also claim that rescission of the deed in the other transaction granted by the court is restoration of the status quo ante, which means the parties are put back in the position before the deed was given, and that would be before the mortgage. So, again, we think the Stumps should be in the first position.  by this court de novo. One of them is a ruling that the bank was not subject to inquiry notice, and even if it were, that there was not enough notice to cause the bank to make any inquiry. But the evidence, all the evidence at trial, was that all financial institutions, big or small, family-owned or publicly-owned, are subject to the doctrine of inquiry notice. Both sides' experts, our banking expert and their lawyer expert, said that was the case. Further, the ruling that there was not enough notice to require the bank to look for the Stumps' interests suggests a misapplication of law as well. Either there was notice or there was not sufficient to require them to do it, and saying there was not enough notice doesn't sound right in that circumstance. There were many facts and circumstances, admittedly known to the bank before it made the loans, that put the bank on inquiry notice. We outline them in detail in our briefs with bullet points. I'll mention a couple of examples. The bank knew in both instances that the Stumps owned the properties just before the transactions. The bank knew there was no way that the Swansons and their entities could have purchased the properties because they just simply didn't have enough money. So they didn't buy them outright. The bank knew that the Stumps had no interest in the LLCs and the trusts that took title to the properties, so they were not somehow participating in the transaction in that sense. It was easy for the bank to investigate this. All they had to do was ask a question of the Swansons. How did you pay for this property? How did you get this property? Is the purchase price paid? Was there a contract? Yet the bank never asked any questions as to either property. The second holding we think is an error of law was that a vendor's lien does not attach to property. We cite in our brief six cases stating that a vendor's lien attaches to and is enforceable against the land that has not been paid for. In other words, the land that was the subject of the deed. And further, that a vendor's lien is enforceable against subsequent purchasers who have notice, such as the bank here. Similarly, it was error for the court to hold that rescission of a deed did not put Stump in first position, that is, ahead of the mortgages. Rescission returns the parties to the deed, to the status quo ante, which as I mentioned is before the mortgage. Further, as takers from the defendants, that is, the Swansons and their entities, the bank could only acquire whatever right the Swansons had. Rescinding that and putting it back in the previous state meant the bank didn't have a right to have that lien against the property. The third holding that we think is an error of law was that the Stumps waived their interest in the properties as to the bank. Waiver is an affirmative defense. The bank did not plead waiver. The bank did not argue waiver at trial. Yet the court ruled the Stumps waived their interest in several respects. The court also appeared to not apply the correct burden of proof if it was going to consider waiver. A party claiming waiver has the burden of proving it, that would be the bank, by clear and convincing evidence. And yet the court in its order mentioned on more than one occasion that Stump did not present evidence that he intended to waive a lien or had not waived a lien, which makes it sound like it was Stump's burden rather than the bank's. Apart from errors of law, the judgment that the bank was not on inquiry notice as to both properties is against the manifest weight of the evidence. The parties agree that if a lender is aware of any fact or circumstance that suggests the possibility of a prior unrecorded claim or a prior claim to a property that it is considering making a loan against, the lender must verify or dispel the inference through diligent inquiry and is chargeable with knowledge of everything it could have found if it does not act to inquire. The standard for whether a lender is on inquiry notice is objective. The prudent bank or the prudent banker, what they would have done in the same or similar circumstances. It is not subjective as to what the particular banker did or didn't do or thought. There was no evidence in this case that the bank acted as a prudent bank. The stump's banking expert, Downs, said the bank did not meet the prudent bank standard in many respects as to every loan and that the bank was on inquiry notice of the stump's interest. The bank's lawyer expert said equitable liens do not appear in the legal chain of title and that a bank would have to ask questions to find them. The bank did not even call a banker as an expert and presented no evidence as to what a prudent banker would have done in the circumstances. All the bank put in was the testimony from Ms. Boykin that she saw nothing suspicious and was not concerned about the loans. Ms. Boykin was the executive vice president in charge of all loans and handled these loans herself. So there was no evidence that the bank acted prudently and the judgment in its favor is against the manifest weight of the evidence because it is not based on the evidence. If the bank had actually done the inquiry that you're asking about, what would it have found? It certainly would have found out that the purchase prices had not been paid and whether the bank or the banker knows of the term equitable lien or vendor's lien, the bank knows that's a problem when a prospective borrower is trying to have them make a loan against property that the borrower hasn't paid for. Because that jeopardizes their collateral. Exactly. And you would think, this being a case where the bank has repeatedly argued that these were collateral-based loans and they didn't really care whether the Swansons could pay for them or not, you would think that they would be all that much more careful about the status of the collateral and would have pursued further inquiry when they see the circumstances I described, that the Stumps owned the property, that there was no way that the Swansons could have bought it, and that the Stumps were not showing up in any of the documentation for the LLCs and for the trusts as having any interest in the property. So what happened there? And there was no inquiry at all. The bank makes an argument, and this goes to your question, Justice McDade, as well, about how it could terminate, that you can't have an equitable lien, a vendor's lien in this case, if another person is supposed to pay, if indeed the property to this party and this party over here is supposed to pay for it. And we've cited in our reply brief at page 10 and page 11 a number of cases, including recent cases and Supreme Court cases, where the court specifically said that that was not the case, that where a party, for example, a buyer is acquiring property and asks that it be deeded to someone else while that party is going to pay for it, not the one who actually gets the deed, it doesn't make any difference. It's still a vendor's lien because everybody knows that it wasn't paid for. So I don't think that helps the bank in that regard. Thank you. Unless the court has other questions, I'll go to my relief. We're asking that the court reverse the judgment in favor of the bank on count four as to the Frankfurt property and rule that the stump's vendor's lien for the purchase price is superior to the bank's mortgage lien on that property. That, of course, also requires that the court reverse the judgment of foreclosure and the order confirming sale of the Frankfurt property to the bank. We also ask that the court reverse the judgments in favor of the bank on counts eight and nine as to the Mokina property and find that the rescission puts the stump's interest ahead of the bank's interest as to the Mokina property or even, if the court sees fit in the alternative, that actually the bank has no interest in the Mokina property because there's been a rescission and they shouldn't have any interest at that point at all. Again, that requires the court also to reverse the judgment of foreclosure and the confirmation of sale as to the Mokina property and, of course, to remand for further proceedings and for such other relief as you think appropriate. Thank you. Thank you, Mr. Vest. Ms. Carlock, good afternoon. Good afternoon. May it please the court, I'm Kendra Carlock and I represent Municipal Trust and Savings Bank. The bank is asking the court to affirm the trial court's decision in its favor, including that no vendors' liens existed which attached to the properties. And, of course, if no vendors' liens existed which attached to the properties, then the inquiry notice issue is completely moot. No amount of inquiry can find a lien that doesn't exist. So, in this case, there are at least three independent and alternative reasons why there can be  Number one, the law is that a vendor's lien is not an interest in or a right of property. And we've cited three cases to the court on that, at least. The Mellon Bank case, the Craddeseer case, the Payne-Winslow case. They all hold not an interest or right in property. And if you think about it, there's a really good reason why it's not a right of property. How could something that is unwritten, unspoken, uncommunicated, undocumented be an interest or a right of property? Where would a third party go to find this secret lien? Where would you go? It just does not make sense to say a vendor's lien is a right of property. So what is a vendor's lien? A vendor's lien is an equitable remedy for a debt against, in only one situation, against an initial purchaser of property when that initial purchaser keeps the property and doesn't pay for it. The idea is, obviously, it's not fair to keep the property and not pay for it. But we do not have an initial purchaser situation here. And that is the second reason why there can be no vendor's lien in this case. For over 100 years, it has been the law in Illinois that a vendor's lien may not be imposed on real estate owned by one party to pay for the debt of another party. And again, I've cited to the court the Cowell case on that and the Anders case on that. So here, in our situation here, Mr. Stumpf and his attorney set up these transactions intentionally so that property was conveyed to one legal entity, but a whole other legal entity promised to pay the purchase price. There's no vendor lien in that situation. And I hope the court has this kind of little messy chart that I drew out, but I thought it might help explain the parties, because there's a lot of them. And I'm just hoping to use it as a demonstrative aid. Of course, at the top of this, we have the Stumpfs. The Stumpfs were the property owners. What the Stumpfs did is they contributed the Frankfort property to an entity known as Piatone Properties, LLC. In the brief, it's called PP for short. About a year and a half later, Stumpf then transferred the Mokina property to another legal entity called MIC, Mokina Investments Company, LLC. Now, I use the word contributed on here for three reasons. One, Mr. Stumpf testified at trial that he contributed these properties to these land development ventures. So it's his words. Two, the bank was told by its customers that these properties were, quote, contributed. And three, they were in fact contributed because PP and MIC never agreed to pay a dime. So who was going to pay? Payment was supposed to come from another entity called Swanson Development Company, SDC, as in the brief. Now, Swanson Development Company was never a customer at Municipal Bank. Swanson Development Company was never a borrower at the bank. Instead, the bank's customers were PP and MIC who owed no money. The bank accepted mortgages from PP and MIC. Nothing from Swanson Development Company because Swanson Development Company didn't own the property. Now, just so we're clear, I don't want to misstate it. Actually, these properties were held in trust and they were transferred also through collateral assignments of beneficials interest and the trustee would transfer the mortgage, so just as an aside. This situation that we have right here on this paper is a situation where a vendor's lien cannot exist because we have a third party agreeing to pay a debt and the property owners owe nothing. So that's the second reason. The third reason that stumps cannot and did not have vendor's liens on these properties is the written documents show no lien. With regard to the Frankfurt property, there was an agreement called the Prairie Creek Agreement and in that agreement, which was drafted by a stumps lawyer, in that agreement, stump transferred good and merchantable title, that's a quote, good and merchantable title to PP. There is no lien language in that written agreement and there is an integration clause saying there are no other agreements between the parties. Now, the case of U.S. Fidelity has that exact same situation. Somebody transferred property by agreement saying they were giving good and merchantable title, they didn't put any lien language in there and there was an integration clause. The U.S. Fidelity court held that there was absolutely no lien in that situation. So if this court were to find that there was a vendor's lien ever on the Frankfurt property, you would have to reverse U.S. Fidelity. It is our exact situation. Now, with regard to the Mokina property, there is even more evidence of no lien of any kind. First of all, stump admits that before he contributed the Mokina property, that he knew the property was going to be used for a bank loan. He wanted it to be used for a bank loan. He worked hard to clear other liens that existed in connection with the Mokina property before he transferred it so that it appeared to have no liens. He then attended the Mokina loan closing, sat right there, never told anyone he had a lien. He was watching it happen. Then the property trustee, because the Mokina property, when it was owned by Stumps, was also in trust, so the Stumps trustee had to sign various closing documents. And one of the closing documents they signed was an ALTA statement. And that ALTA statement says that the Mokina property seller did not have any unrecorded interests. That's what the closer was looking at at the title company to make sure there were no other liens before the title insurance was issued. We have that document in writing. In addition to that, there is a P-Tax form that's signed at the closing. And there's a line on there where you can list if you have any mortgages or liens on the property. And Stump or his trustee put in zero, none. So they're affirmatively giving the bank documents saying they have no liens. So based on the written documents, we know that there is no lien and no lien was intended. But even beyond that, the testimony at trial was that neither Stump nor his attorney, verbally or in writing or in any way, ever communicated to any party in this case that he intended to retain a lien. Never mentioned it. Never brought up. Yet now today, he's trying to tell everyone he had a lien. Just doesn't make sense based on the transactions at the time. Because no vendor's liens attached to the property, the bank cannot be subject to inquiry notice. And that's what the trial court found. There is one very important and analogous case on an inquiry notice issue that I want to mention. And that is the Glenview case. In Glenview, the court held that oral property interests are not subject to inquiry notice. Period. The court reasoned that because there were no documents available to the lender to confirm whether there was a lien or not a lien, that inquiry notice should not apply. Following that same reasoning, a secret lien like we have here, a lien that's not even oral, definitely not written, never been communicated about ever, cannot be subject to inquiry notice. And that's what the trial court found. We're back to where would we look for it? So, there are also duties or really no duties under Illinois law that are important. Under Illinois law, a bank has no duty to make sure a seller gets paid. A bank has no duty to ask if the purchase price has been paid. A bank has no duty to search for or question property sellers to ask if a lien has been retained or ask if the purchase price has been paid. We don't have any duty to do that. So, again, applying inquiry notice here just wouldn't make sense under the state of Illinois law. Alternatively, the bank cannot be subject to inquiry notice because there was no fact known by the bank from which it could reasonably suspect that Stumps retained the lien. Now, my opposing counsel said, but you could have asked. You should have asked. That's not the test for inquiry notice. The test is not what would you have found out if you asked. The test is, what do you already know? And from what you already know, could you have inferred that this secret lien existed out there? And the answer here is no. You could not have inferred that. Let me ask you, Ms. Kerouac. The bank knew that there had been a financial statement submitted by each of the Swansons, that there had been contradictory credit reports that they had gotten. Is that enough to suggest to the bank that they might be dealing with some shady characters and that maybe they should look a little more because their collateral might be at risk? Well, I don't think so for a couple of reasons. And actually, there's some testimony from Charles I want to talk about. But remember under our scenario, if the bank had asked PP or MIC or the Swansons individually if they owed any money in connection with this property, they could honestly and legitimately say they owed nothing. So we really were not concerned with what the financial statement said. We were making collateral-based loans. The value at that time of these properties was so much greater than the money we were lending that the financial statements were not of a significant nature to us at the time. But let me just also say, Stump's banking expert testified at trial that he looked at those financial statements and there was nothing in there that made him suspect that Stump may have had a lien. And that's really what we're looking for here. Did he have a lien? Are these characters shady or not? But did he have a lien? And there's just nothing in those financial statements that would indicate to us that Stump had a lien. Significantly, there is no case that has been found or cited by Stump's that has ever held that a vendor's lien... No case cited where a vendor's lien was given priority over a bank's recorded mortgage. Never. So you would be the first court ever to hold that a vendor's lien should be given priority over a recorded mortgage. Likewise, there is no case out there where a lender was ever charged with inquiring notice of a vendor's lien. You would also be the first court ever to hold that. Stump's had not presented good reason for this court to extend or expand the law in that way. We are asking this court to affirm the trial court's judgment in favor of the municipal bank in all respects. Thank you, Ms. Carlott. Mr. Vess, rebuttal? I'm going to jump around a little bit, but let me start with that Glenview case where the bank says that it says oral property interests are not subject to inquiry notice. In fact, in that case, it was decided based on a contract clause that if the seller conveyed the property prior to substantial completion, the property would be subject to construction loan mortgages. And that is the clause that the court said the bank had a right to rely on. It expressly said that it would be subject to those mortgages. It didn't need to go any farther. And if you think about it, oral property interests, unrecorded interests, perhaps unwritten interests, are what equitable liens have always been about. If they're in the chain of title, then that's where they are, they're legal interests. That's exactly the distinction that the bank's own expert drew, the lawyer. So I don't think Glenview says anything close to what they're saying. The chart here talks about property being contributed. And actually, Ms. Boykin testified to something else. Don Swanson Sr. said he told Ms. Boykin that the property had been contributed, the properties had been contributed to joint ventures by the Stumps. And when Ms. Boykin, after hearing Mr. Swanson testify to that at trial, Ms. Boykin said she did not recall him telling her that. And if he had told her that, she would have asked more questions. That's at page 881 in the record. And she didn't recall asking any questions at all about how they were acquiring the property or anything along that line. She did not ask any questions about contracts out there. And she did not ask the purchase price for either property and was not aware that there was a purchase price, even though the properties were coming in within a few days before she was making the loans, being transferred a few days before she was making the loans. But she had appraisal values, right? Well, I think the appraisal values support the fact that she needed to ask more questions. The Mokina appraisal value, one of them was about $8 million and one was about $6 million. So how did the Swansons acquire those properties when they couldn't possibly have afforded to pay for them? Okay, but they didn't. The properties were acquired by the two development companies. Well, that was the next point I was going to. It's real nice to lay out all these LLCs here and talk about trusts and different LLCs and all that. It's all the Swansons. Don Jr. was the manager of each of these LLCs. He and his father were the members of most of them. He and his grandmother were the members of another one. It's all the Swansons. And in fact, the bank knew that it was the Swansons. They got various documents from them showing who the members were, who the managers were. So to say that these are all different people or somebody else was supposed to pay for it really doesn't get them anywhere, I don't think. Let me just ask you, assuming that you have a vendor's link, given that, that still leaves a question of priority, a big question. And it's unreported. It's just like if two people go out and say some shady guy goes in and goes out and mortgages a piece of property to two different people at the same time. Well, they're running to the courthouse and the first one in there that gets its stamp has priority. So you have a lien, but you still lose. The question is here. And counsel says that you can't point to a single case that where an unreported vendor's lien was given priority over a reported mortgage. What say you to that? Okay, first of all, as far as the priorities, I say that Illinois is a race notice state. The first one to record wins unless that party has notice, as I mentioned earlier, either actual, constructive, or inquiry. So you don't just win because you're the first one to record. As to the... I'm sorry, what was your second point? The counsel pointed out that there's not a single case... Oh, right. Frankly, I have to agree, in Illinois, I have not found a case where that happened. I haven't found a case where it happened the other way either, where a court actually ruled that there was no vendor's lien and the mortgage was superior. There are some cases, for example, LaSalle Bank v. Verone, which were decided on summary judgment and went up to the appellate court and were reversed, and that would suggest that there was at least a question of fact in those cases as to whether the party that had a vendor's lien was going to wind up in first position. But they were apparently resolved without further appeals. There's nothing else reported. So I think this is sort of a case of first impression either way to me if you're talking about the specific facts of this case and how a vendor's lien gets enforced. But clearly the law is you don't have to do anything to claim a vendor's lien. It happens as a matter of equity simply from deeding a property and not getting paid. And you don't have to take some affirmative act to assert it. You don't have to do anything else. It's simply a point of equity that you want people to get paid for their property. And that didn't happen here. Okay. Thank you. Did you have another question? No. We thank you both for your arguments this afternoon. I know that it's made the case a little clearer for me. The documents were unwieldy at best. We will issue a written decision as quickly as possible. The court stands in brief recess for a panel.